THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).



ENTERED
CLERK, U.S. DISTRICT COURT

MAY 1 9 1999

CENTRAL DISTRICT OF CALIFORNIA
BY

FILED
CLERK, U.S. DISTRICT COURT

M*Y 1 4 1999

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| COOPER HAGANS III,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF BANNING, et. al.,<br><br>　　　　　Defendants. | Case No. CV 96-9008 CBM (JGx)<br><br>ORDER: GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON SECOND CAUSE OF ACTION AND DENYING DEFENDANT'S MOTION ON FIRST AND THIRD CAUSES OF ACTION |

The matter before this Court, the Honorable Consuelo B. Marshall, United States District Judge, presiding, is Defendant's Motion for Summary Judgment. On February 22, 1999, the parties appeared before the Court, the Honorable Consuelo B. Marshall, United States District Judge, presiding. Upon consideration of the papers submitted and the arguments of counsel, the Court DENIES Defendant's Motion for Summary Judgment on the first and third causes of action, and GRANTS Defendant's Motion for Summary Judgment on the second cause of action.

## BACKGROUND

Plaintiff, an African-American, was hired by the City of Banning on October 15, 1984 as a police officer. Within one year he was promoted to the rank of corporal, and subsequently attained the rank of sergeant. He served as an officer until August 12, 1994, when his employment with the Department was terminated, and Plaintiff began drawing industrial disability pay due to back problems. Plaintiff alleges that, during his tenure with the City of Banning, he was subjected to discrimination in training, promotion, discipline, and assignments. Among these alleged

DOCKETED
MLD COPY PTYS
MLD NOTICE PTYS
JS-6

1  discriminatory incidents are the following:

2      • **Training** - Plaintiff states that he was denied the opportunity to participate in a 1994
3         officer training program to the same extent as other non-minority officers;

4      • **Promotion** - Plaintiff alleges that in 1989, he applied for an opening as a Lieutenant in
5         the Department, but was subject to race-based discrimination in the hiring process;

6      • **Special Assignments** - Plaintiff alleges that he was subjected to a race-based denial of
7         an opportunity to fairly compete for special assignments within the Department;

8      • **Discipline** - Plaintiff alleges that he was subjected to race-based discipline on numerous
9         occasions throughout his term of employment with the Department, including, in 1988
10        and 1995, disciplinary action for sexual harassment.

11        Plaintiff also offers evidence of incidents occurring over the course of his service as a police
12 officer that allegedly created a hostile environment.  Plaintiff alleges the following:

13      • **KKK Literature** - Plaintiff states that there was KKK literature at work in the break
14         room and that another African-American, Officer Leo Metoyer, and other officers, called
15         Corporal Ray Gardner "GW," which was short for Grand Wizard of the KKK;

16      • **"Black Jive Talk"** - Plaintiff alleges that a female secretary would use "black jive talk"
17         when addressing another black female officer, call her "sister," and give her "five" every
18         morning;

19      • **Epitaphs** - Plaintiff alleges that numerous officers within the department used the word
20         "nigger;"

21      • **Failure to Investigate Harassment** - Plaintiff allegess that the Department failed to
22         investigate his claims that he was being discriminated against;

23      • **Drug Investigations** - Plaintiff alleges that he was twice falsely implicated in
24         investigations for alleged drug dealing and supplying drugs to juveniles;

25      • **Failure to "Back Up"** - Plaintiff alleges that he encountered difficulties in getting
26         officers to "back him up" while on patrol on various dates.

27        In April, 1996, Plaintiff filed complaints with the Equal Employment Opportunity
28 Commission and the California Department of Fair Employment and Housing.  Plaintiff received

1  "right to sue" letters from the agencies, and subsequently filed this action against the City and several

2  individual defendants.  The only remaining defendant is the City of Banning.  Plaintiff's First

3  Amended Complaint, filed April 14, 1997, lists three distinct causes of action for:  (1) harassment,

4  discrimination and wrongful termination in violation of the California Fair Employment and

5  Housing Act; (2) harassment, discrimination and wrongful termination in violation of the Americans

6  with Disabilities Act; and (3) harassment, discrimination and wrongful termination in violation of

7  the Title VII of the Civil Rights Act of 1964.

8                              **STANDARD OF LAW**

9         Summary judgment may be granted when the "pleadings, depositions, answers to

10  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

11  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

12  of law." Fed. R. Civ. P. 56(c).  In a motion for summary judgment, "[i]f the party moving for

13  summary judgment meets its initial burden of identifying for the court those portions of the

14  materials on file that it believes demonstrates the absence of any genuine issues of material fact,"

15  the burden of production then shifts so that the non-moving party must set forth, by affidavit or

16  as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial."

17  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir.

18  1987)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

19                              **DISCUSSION**

20  **I.      Cause of Action for Violations of ADA**

21         Defendant argues that Plaintiff failed to exhaust his administrative remedies as required

22  for his ADA claim.  "Incidents of discrimination not included in an EEOC charge may not be

23  considered by a federal court unless the new claims are 'like or reasonably related to the

24  allegations contained in the EEOC charge.'"  Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir.

25  1990).  The requirement that a plaintiff indicate the facts giving rise to a plaintiff's complaint is

26  central to the federal anti-discrimination statutes and provides the EEOC (or equivalent state

27  agency) a chance to informally resolve employment discrimination claims before resorting to

28  litigation.  See e.g. Ong v. Cleland, 642 F.2d 316, 319 (9th Cir. 1981).  The proper inquiry is

1   whether an EEOC investigation would have uncovered the additional charges made in the

2   complaint but not included in the EEOC filing.  See Sosa, 920 F.2d at 1456.

3       In his EEOC and DFEH filings, Plaintiff not only failed to check the disability

4   discrimination box, he also failed to allege any facts which would alert the reviewing agencies

5   that a disability claim might be implicated.  Plaintiff's administrative filings failed to even

6   intimate that he intended to pursue a claim for disability discrimination.  Accordingly, since

7   Plaintiff has failed to exhaust his administrative remedies under the ADA, Defendant's Motion

8   for Summary Judgment is granted on the Plaintiff's second cause of action.

9       **II.     Causes of Action for Violations of FEHA and Title VII**

10      **A.     Continuing Violation Doctrine**

11      Defendant contends that many of the allegedly discriminatory acts cited by Plaintiff's

12  Complaint are barred by the statute of limitations.[1]  Plaintiff, however, argues that the continuing

13  violation doctrine applies to these acts.

14      A plaintiff may obtain relief for an otherwise time-barred act under the continuing

15  violation doctrine by linking it with an act that falls within the limitations period.  If such a

16  linkage is appropriate, the courts treat the incidents as one continuous act.  Green v. Los Angeles

17  County Superintendent of Sch., 883 F.2d 1472, 1480 (9th Cir. 1989).  The Ninth Circuit

18  recognizes two categories of continuing violations: (1) a "systematic policy" of discrimination,

19  also referred to as "an employer wide policy or practice," and (2) a "series of related acts against

20  a single individual."  See Sosa, 920 F.2d at 1455; Green, 883 F.2d at 1480.

21      In the present case, Plaintiff does not identify which of these two theories he is

22  attempting to proceed under; however, the evidence offered by Plaintiff tends to suggest that

23  "series of related acts" theory is the most applicable here.  Under the "series of related acts"

24  theory, the question of whether a continuing violation exists "boils down to whether sufficient

25  evidence supports a determination that the alleged discriminatory acts are related closely enough

26  _____

27      [1]Under the foregoing analysis, the Court finds that Plaintiff has exhausted his administrative
    remedies as to the Title VII and FEHA causes of action for all violations within 300 days and 1 year,
28  of the filings, respectively.

1  to constitute a continuing violation." Green, 883 F.2d at 1480-81. Where actions occurring prior

2  to the statute of limitations could only legally be recognized as harassment or discrimination in

3  light of subsequent similar actions, such actions will not be time barred. See Selan v. Kiley, 969

4  F.2d 560, 564 (7th Cir. 1992). The Ninth Circuit has not identified a specific test for determining

5  whether such acts are closely related enough to constitute a continuing violation; however, many

6  circuits have followed factors identified in Berry v. Board of Supervisors of L.S.U., 715 F.2d

7  971, 981 (5th Cir. 1983).[2]

8         In Berry, the Fifth Circuit identifies three factors relevant to the determination of a

9  continuing violation. The first is subject matter. Do the alleged acts involve the same type of

10  discrimination, tending to connect them in a continuing violation? The second is frequency. Are

11  the alleged acts recurring (e.g., a bi-weekly paycheck) or more in the nature of an isolated work

12  assignment or employment decision? The third factor is the degree of permanence. Does the act

13  have the degree of permanence which should trigger an employee's awareness of and duty to

14  assert his or her rights, or which should indicate to the employee that the continued existence of

15  the adverse consequences of the act is to be expected without being dependant on a continuing

16  intent to discriminate? Berry, 715 F.2d at 981.

17         Of these factors, courts have emphasized the third factor as of the most importance. See

18  Selan, 969 F.2d at 656. Where it would be unreasonable to require the Plaintiff to sue separately

19  for each violation, a court will allow an application of the continuing violation doctrine. Id.

20  However, where an event "should have alerted the average lay person to act to protect his rights,

21  or where he should have perceived that discrimination was occurring," he must act to vindicate

22  his rights, otherwise his suit will be time-barred. Selan, 969 F.2d at 566, n. 7 (citing Dumas v.

23  Town of Mount Vernon, 612 F.2d 974, 978 (5th Cir. 1980). Likewise, the Seventh Circuit has

24  explained that "the purpose of permitting a plaintiff to maintain a cause of action on the

25  continuing violation theory is to permit the inclusion of acts whose character as discriminatory

26

27         [2]See West v. Philadelphia Elec. Co., 45 F.3d 744 (3d Cir. 1995); Mascheroni v. Board of
    Regents of Univ. of California, 28 F.3d 1554 (10th Cir. 1994); Selan v. Kiley, 969 F.2d 560 (7th Cir.
28  1992); Sabree v. United Bd. of Carpenters and Joiners, 921 F.2d 396 (1st Cir. 1990).

1   acts was not apparent at the time they occurred." Doe v. R.R. Donnelley & Sons Co., 42 F.3d

2   439, 446 (7th Cir. 1994)(citing Moskowitz v. Trustees of Purdue Univ., 5 F.3d 279, 282 (7th Cir.

3   1993).

4        **1.     Application to Harassment Claims Under FEHA & Title VII**

5        A harassment claim may denote an allegation of either one or a few very offensive

6   incidents, or a series or pattern of smaller incidents or comments resulting in actionable

7   harassment.  Where a series or pattern of small incidents form the basis for a harassment claim in

8   the workplace, this is known as "hostile environment" harassment.  Hostile environment claims

9   generally consist of a number of incidents which by themselves are not actionable, but when

10  viewed in the context of an extended period of time, may constitute an actionable case for a

11  hostile work environment.  For this reason, a hostile environment claim usually involves a

12  continuing violation.  See Waltman v. International Paper Co., 875 F.2d 468, 476 (5th Cir. 1989).

13  Further, acts that are "sufficiently recurrent [may] create a continuously hostile environment,"

14  even in the absence of current harassment.  Waltman, 875 F.2d at 476; see also Gutowsky v. City

15  of Placer, 108 F.3d 256, 259 (9th Cir. 1997).

16       Plaintiff offers evidence to establish that he was subjected to a hostile working

17  environment.  Several of the described events fall within the statute of limitations, and a pattern

18  of conduct is apparent.  Accordingly, the continuing violations doctrine applies to the Plaintiff's

19  harassment claim.

20       **2.     Application to Discrimination Claims Under FEHA and Title VII**

21       The essence of Plaintiff's discrimination claim consists of evidence of various discrete

22  acts occurring over the course of Plaintiff's employment.  These alleged acts, occurring many

23  months apart over the course of nearly ten years, include allegations of discrimination in: (1)

24  training; (2) promotion; (3) special assignments; and (4) discipline.  These actions often occurred

25  many months or even years apart, involved different subject matter, and were of a sufficient

26  degree of permanency to alert the average person that discrimination was then-occurring, and did

27  not require subsequent actions in order to allow Plaintiff to recognize their true character.

28  Therefore, under the factors promulgated by the Fifth Circuit in Berry, and applied herein by this

- 6 -

1   Court, these acts are barred by the statute of limitations, and do not constitute a continuing

2   violation. Accord Wingfield v. United Technologies Corp., 678 F. Supp. 973, 982 (D. Conn.

3   1988)("to hold that continuing violation doctrine applies every time employer commits multiple

4   acts of discrimination against single employee would undermine purpose of filing

5   requirements").

6       The only alleged discriminatory act occurring no more than 300 days prior to the filing of

7   Plaintiff's EEOC on April 12, 1996, and 1 year prior to the filing of Plaintiff's DFEH complaint

8   on April 25, 1996 is the alleged false accusation of sexual harassment and constructive discharge

9   occurring in August of 1995. See 42 U.S.C. § 2000e-5(e)(1); Cal. Gov't. Code § 12960.

10      **B.      Merits of Discrimination and Harassment Claims**

11      **1.      Merits of Discrimination Claim**

12      In a Title VII case alleging discrimination, a plaintiff must prove that he was intentionally

13  treated less favorably because of his membership in a protected class. McDonnell Douglas Corp.

14  v. Green, 411 U.S. 792, 802 (1973). To establish a prima facie case of discrimination, the

15  plaintiff must offer evidence that gives rise to an inference of unlawful discrimination. Id. Proof

16  of discriminatory intent need not be direct, but rather it can be garnered from circumstantial,

17  statistical, or other evidence. See Stender v. Lucky Stores, 803 F. Supp. 259, 319 (N.D. Cal.

18  1992).

19      Where the prima facie case is based on indirect or circumstantial evidence, the plaintiff

20  bears the initial burden of showing that: (1) he is a member of a protected class; (2) he was

21  performing his job well enough to rule out the possibility that the adverse employment action

22  occurred because of inadequate job performance; and (3) similarly situated non-protected

23  employees were not subjected to similar adverse action. St. Mary's Honor Ctr. v. Hicks, 509

24  U.S. 502, 507 (1993). If the plaintiff succeeds in establishing a prima facie case, a presumption

25  arises that the defendant unlawfully discriminated against the plaintiff. Texas Dept. of

26  Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). The burden then shifts to the

27  defendant to rebut the prima facie case by producing evidence that the employment decision was

28  made for legitimate, non-discriminatory reasons. Id.

- 7 -

1    Where the defendant can produce such evidence, the burden then shifts back to the

2  plaintiff to demonstrate that the defendant's proffered reason is a pretext for a discriminatory

3  motive. Id. Plaintiff may rely on a showing that the decisions in question were more likely than

4  not motivated by a discriminatory reason. See U. S. Postal Serv. Bd. of Governors v. Aikens,

5  460 U.S. 711, 716 (1983). The plaintiff meets his ultimate burden of persuasion if he

6  demonstrates that a discriminatory reason "was a motivating factor for any employment practice,

7  even though other factors also motivated the practice." 42 U.S.C. S 2000e- 2(m); see also Price

8  Waterhouse v. Hopkins, 490 U.S. 228, 241 (1989) (Title VII condemns even those decisions that

9  were based on a mixture of legitimate and illegitimate reasons).

10    In the present case, Plaintiff has met his initial burden by offering evidence to show that:

11  (1) he is a member of a protected class, (2) he was otherwise satisfactorily performing in his

12  position, and (3) other similarly situated non-protected employees were not subjected to similar

13  adverse action. The City rebuts Plaintiff's evidence by offering numerous non-discriminatory

14  explanations for their action. Plaintiff has, in turn, provided evidence of pretext by offering a

15  sufficient measure of circumstantial evidence supporting the prevalence of racial bias in the

16  Department. For these reasons, Plaintiff has created a triable issue of material fact as to the true

17  reasons for this action. See Washington v. Garrett, 10 F.3d 1421, 1433 (9th Cir. 1993); Morgan

18  v. Fairchild Indus., Inc., 797 F.2d 727, 733 (9th Cir. 1986)(stating that where employer's true

19  motivations for adverse employment actions are at issue, summary judgment in favor of

20  Defendant is "generally unsuitable"). Therefore, this Court DENIES Defendant's Motion as to

21  the discrimination claims under the FEHA and Title VII.

22    **2.    Merits of Harassment Claim**

23    A prima facie case for a hostile work environment in violation of Title VII requires that

24  the plaintiff establish the existence of a factors which are "sufficiently severe or pervasive to alter

25  the conditions of employment and create an abusive working environment." Harris v. Forklift

26  Sys., Inc., 510 U.S. 17, 21 (1993)(citing Meritor Sav. Bank v. Vinson, 477 U.S. 57, 67, (1986)).

27  The "mere utterance of an . . . epithet which engenders offensive feelings in an employee does

28  not sufficiently affect the conditions of employment to implicate Title VII." Id.

1        In the present case, Plaintiff has presented evidence of the use of discriminatory epithets,

2  comments, jokes, and literature by department personnel.  Defendant has likewise produced

3  evidence which disputes both the existence and the extent of any harassment within the

4  Department.  However, there is sufficient substantiation of Plaintiff's allegations to create an

5  issue for a trier of fact to determine whether this conduct was severe enough to alter the

6  conditions of Plaintiff's employment.  Accordingly, this Court denies the Defendant's Motion for

7  Summary Judgment on the Harassment claim.

8        **C.**    **Judicial Estoppel and Constructive Discharge**

9        **1.**    **Judicial Estoppel**

10       Defendant contends that it is entitled to summary judgment on the constructive discharge

11  claim because Plaintiff applied for, and received, full disability benefits.

12       In June, 1995, Hagans applied for retirement because of disability and began receiving

13  full disability benefits pursuant to the Social Security Act.  Defendant argues that Mr. Hagans'

14  representations of disability to the Social Security Administration preclude him from now

15  asserting to this court that he was qualified and capable of performing his job.  However, Ninth

16  Circuit cases have rejected the application of judicial estoppel in this context.  <u>See</u> <u>e.g.</u> <u>Lujan v.</u>

17  <u>Pacific Maritime Ass'n</u>, 165 F.3d 738 (9th Cir. 1999);  <u>Johnson v. Oregon</u>, 141 F.3d 1361 (9th Cir.

18  1998).

19        **2.**    **Constructive Discharge**

20       A claim for constructive discharge is evaluated under an objective standard.  Specifically,

21  a court must determine whether "under all the circumstances, the working conditions are so

22  unusually adverse that a reasonable employee in plaintiff's position would have felt compelled to

23  resign." <u>Turner v. Anheuser-Busch, Inc.</u>, 7 Cal. 4[th] 1238, 1247 (1994)(citations omitted);

24  <u>Schindrig v. Columbia Mach., Inc.</u>, 80 F.3d 1406, 1411 (9th Cir. 1996).  "[A]dverse working

25  conditions must be unusually 'aggravated' or amount to a 'continuous pattern' before the

26  situation will be deemed intolerable..." <u>Turner</u>, 4 Cal. 4[th] at 1247.  Plaintiff has met his burden of

27  defeating summary judgment by providing sufficient evidence to raise a triable issue of fact as to

28  whether there was such an environment.  Accordingly, the Court DENIES Defendant's Motion

1  for Summary Judgment on the constructive discharge claim.

2  **CONCLUSION**

3  For all of the aforementioned reasons, the court GRANTS Defendant's motion as to

4  Plaintiff's second cause of action for harassment, discrimination and wrongful termination in

5  violation of the ADA.

6  With regard to the remaining causes of action for discrimination, harassment and

7  constructive discharge in violation of FEHA and Title VII, the Court finds that: (1) the doctrine

8  of "continuing violation" applies to Plaintiff's hostile environment claim, but not to Plaintiff's

9  discrimination claim, (2) none of Plaintiff's claims are barred by judicial estoppel, and (3) there

10  are disputed issues of material fact that preclude a grant of summary judgment for Defendants.

11  Accordingly, the Court DENIES Defendant's motion as to Plaintiff's first and third causes of

12  action for harassment, discrimination and constructive discharge in violation of FEHA and

13  TITLE VII.

14  **RULINGS ON EVIDENTIARY OBJECTIONS**

15  With respect to the evidentiary objections filed by both parties in conjunction with this

16  Motion, the Court rules as follows:

17  (1)  Defendants' Objections to the Declaration of Cooper Hagans: Objections to ¶¶ 5, 7:19-20,

18  13(a), 17-21, 22:5-6, 24:3-5, 28, 29, 30(j-n), 35, and 42 are overruled; Objections to ¶¶ 6,

19  7:21-26, 9, 10, 13(b-d), 14, 22(a-d), 23, 25, 26, 30 (a-i, p), 31, 33, 36-40 are sustained;

20  (2)  Defendants' Objections to Declaration of Mindy Bish: Defendant's Objections are

21  overruled;

22  (3)  Defendants' Objections to Declaration of John Ramirez: Objections to ¶¶ 3-4, 6-7, 9 and

23  10 are overruled; Objections to ¶¶ 5: 14-16, 11:10-13, 12 are sustained;

24  (4)  Defendants' Objections to Declaration of Karen Foster: Objections to ¶¶ 4-5, 8b-d, 9, 10,

25  12-15 are overruled; Objections to ¶¶6:6-14, 8a, 15-21, 22:11-17, 23, and 24:26-28 are

26  sustained;

27  (5)  Defendants' Objection to the Deposition of Linda Roberts: Objection to ¶29 is sustained;

28  (6)  Defendants' Objections to the Deposition of Charol Page: Objections to ¶¶12-17, 26, 27,

1   30, 67, 84 and 119:16-17 are overruled; Objections to ¶¶ 20, 28, 31-44, 77-83, 119:12-13,

2   125-128 are sustained;

3   (7)   Plaintiff's Objections to Declaration of Freddie Stokes: Plaintiff's objections are

4   sustained;

5   (8)   Plaintiff's Objections to Declaration of George Lanterman: Plaintiff's objections are

6   sustained regarding the text commencing with "[o]n other occasions..." and concluding

7   with refused to do so formally;" The objections to the remaining portions of the

8   declaration are overruled;

9   (9)   Plaintiff's Objections to the Deposition of Terry Ford: Plaintiff's objections are

10   overruled.

11   **IT IS SO ORDERED.**

12

13   DATE: May 14, 1999

14                                        CONSUELO B. MARSHALL
                                          UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 11 -